MEYNER AND LANDIS LLP
One Gateway Center Suite 2500
Newark, New Jersey 07102
Catherine Pastrikos Kelly, Esq.
P: 973.602.3423
*Attorneys for Plaintiff*
*Transworld Logistics Group, Inc.*

## UNITES STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRANSWORLD LOGISTICS GROUP, INC., | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| | **COMPLAINT** |
| TRANSWORLD LOGISTICS & SHIPPING SERVICES, INC., | |
| Defendant. | |

Plaintiff Transworld Logistics Group, Inc. ("**Plaintiff**") files this Complaint against Transworld Logistics & Shipping Services, Inc. ("**Defendant**"), as follows:

### I.   PRELIMNINARY STATEMENT

1. Plaintiff has been a freight forwarding and warehousing company since 1986, providing services throughout the United States and the rest of the world.

2. Plaintiff is the holder of a US registered trademark entitled TLG TRANSWORLD LOGISTICS GROUP, Reg. No. 2,317,944 (the "**Trademark**").

3. Plaintiff also holds Federal Maritime Commission's Ocean Freight Forwarder License No. 2654-R, which allows Plaintiff to offer ocean freight services to or from the U.S.

1

without owning a ship and allows Plaintiff to conduct business under the designation "Transworld Logistics Group, Inc."

4. Defendant, however, is using Plaintiff's name to conduct business throughout the United States.

5. Defendant is doing this without Plaintiff's approval or authorization and Plaintiff is in no way connected to Defendant's business.

6. Although Plaintiff put Defendant on notice of these issues, Defendant continues to use Plaintiff's Trademark.

7. To add to the confusion, Defendant has two employees that have or use similar names to Plaintiff's Chief Executive Officer, Ziad Barghash: one employee named "Zia" and another named "Prakash".

8. Therefore, upon information and belief, when customers or vendors mistakenly called Defendant requesting Plaintiff's Chief Executive Offer, they were transferred to either "Zia" or "Prakash".

9. Even more confusing, "Zia's" email address with Defendant is Zia@transworld.com.

10. This is despite the fact that Defendant's other email addresses are styled as firstname.lastname@transworld.com.

11. Thus, there is no doubt that Defendant is purposefully causing this confusion to capitalize on Plaintiff's well-regarded name in the business.

12. As a result, there has and continues to be instances of actual confusion between the Trademark and services offered by Defendant.

13. Indeed, Plaintiff's name is "Transworld Logistics Group" and Defendant is using the name "Transworld Logistics & Shipping Services", which is strikingly similar.

14. Adding to the confusion, up September 2024, both Plaintiff and Defendant were located in Middlesex County and their offices were less than 8 miles apart.

15. Defendant's use of Plaintiff's name has caused and continues to cause Plaintiff dilution of Plaintiff's name, an erroneous association between Plaintiff and Defendant and significant damages.

16. Plaintiff files this lawsuit to maintain control of its brand, to protect its intellectual property and to clear the confusion and dilution in the marketplace by setting the record straight—Plaintiff is not in any way affiliated with Defendant.

17. Plaintiff requests that the Court immediately and permanently stop Defendant from using its Trademark.

## II. THE PARTIES

15. Plaintiff TRANSWORLD LOGISTICS GROUP, INC. is a corporation organized under the laws of New Jersey with a principal place of business at 242 Old New Brunswick Road, Suite 390, Piscataway, New Jersey 08854.

16. On information and belief, Defendant TRANSWORLD LOGISTICS & SHIPPING SERVICES, INC. is a corporation organized under the laws of New Jersey with a principal place of business at 700 Alexander Park Drive, Suite # 201 Princeton, New Jersey 08540. Up until September 2024, Defendant was located at 200 Middlesex Essex Turnpike, Suite 200, Iselin, New Jersey 08830.

### III. JURISIDICTION AND VENUE

17. This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, *et seq.*, and under statutory and common law of unfair competition.

18. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law.

19. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

20. On information and belief, this Court may exercise personal jurisdiction over Defendant because Defendant's principal place of business is within this District, Defendant does business in this District and Defendant has committed acts of infringement at issue in this Complaint in this District.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, on information and belief, Defendant's principal place of business is within this District, Defendant does business in this District and Defendant has committed acts of infringement at issue in this Complaint in this District.

### IV. FACTUAL ALLEGATIONS

**A.   Plaintiff Files A Trademark To Protect Its Valuable Mark.**

22. Plaintiff has been a freight forwarding and warehousing company since November 1986, providing its services throughout the United States and the rest of the world, and is located in Middlesex County, New Jersey.

23. Plaintiff worked hard to build a spectacular reputation throughout the United States and around the globe as reliable and timely.

24. Plaintiff especially focused on its relationships with customers and vendors.

25. For example, Plaintiff ensured that it paid vendors on time and built a reputation of trust with its vendors.

26. Because of its good relationship with clients, clients would refer Plaintiff to others and Plaintiff received approximately 2-3 referrals from clients per day.

27. On February 15, 2000, Plaintiff registered the Trademark with the U.S. Patent and Trademark Office, which was designated Reg. No. 2,317,944.

28. The Trademark appears as follows:



29. Having a distinctive trademark is an important factor in creating a market for Plaintiff's services, in identifying Plaintiff's brand and in distinguishing Plaintiff's services from others.

30. Plaintiff began using the Trademark on or about November 12, 1986.

31. Plaintiff first used the Trademark in commerce on or about June 23, 1987 and, since then, has continuously used the Trademark when conducting its business.

32. The Trademark is for "freight forwarding; warehousing; freight forwarding consulting, and freight forwarding logistics, in class 39."

33. The Trademark was renewed on or about October 19, 2009, and again on or about March 28, 2020.

34. The Trademark has always been active and registered at all relevant times discussed herein.

35. Pursuant to 15 U.S.C. § 1065, the Trademark is incontestable and constitutes conclusive evidence of the validity of the Trademark, Plaintiff's ownership of the Trademark and Plaintiff's exclusive right to use the Trademark.

**B. Defendant Unlawfully Uses Plaintiff's Trademark But Agrees To Stop After Plaintiff Sent A Cease-And-Desist Letter.**

36. Defendant was formed as a corporation in the State of New Jersey on or about April 8, 2002.

37. In or around July 2003, Plaintiff became aware of Defendant's unlawful use of the Trademark.

38. Specifically, Plaintiff became aware that Defendant was using the name "Transworld Logistics & Shipping Services".

39. As a result, on July 28, 2003, Plaintiff's counsel sent Defendant a cease-and-desist letter (the "**2003 Cease and Desist**").

40. On July 31, 2003, Defendant responded to the 2003 Cease and Desist, stating Defendant wanted to resolve the issue amicably and agreed not to use the Trademark.

41. Specifically, Defendant agreed to file a "DBA" certificate with the State of New Jersey to be known as "TLSS Inc."

42. Defendant also stated it would ensure its business cards, letterheads, envelopes and telephone directory names would be changed to TLSS Inc. so that "clients know that we are two separate entities."

43. On February 23, 2004, Plaintiff sent Defendant a letter requesting confirmation that Defendant made the changes to which the parties agreed.

44. On February 25 2004, Defendant responded to Plaintiff via letter that Defendant made all of the changes to which the parties agreed.

45. Indeed, the letterhead of Defendant's letter indicated it was using the new name of "TLSS, Inc."

46. On March 1, 2004, Plaintiff's attorney requested that Defendant send examples of the advertising materials, business cards, invoices, price sheets and other documents that Defendant modified to avoid infringement.

47. On March 5, 2004, Defendant provided Plaintiff with proof of change to its letterhead, business cards, and advertisements.

C. **Defendant Brazenly Continues Infringing Plaintiff's Trademark.**

48. Plaintiff has become aware that, despite its assurances, Defendant continues to infringe on the Trademark.

49. For example, despite Defendant's assurances that it would be known as TLSS Inc., Defendant's website now advertises itself as:



50. Defendant's website states Defendant specializes in "comprehensive freight management and transport solutions."

51. Plaintiff recently did a business search for Defendant on the internet and found that Bloomberg lists Defendant as "Transworld Logistics Shipping Services Inc."

52. To add to the confusion, Defendant has two employees that have or use similar names to Plaintiff's Chief Executive Officer, Ziad Barghash: one employee named "Zia" and another named "Prakash".

53. Therefore, upon information and belief, when customers or vendors mistakenly called Defendant requesting Plaintiff's Chief Executive Offer, they were transferred to either "Zia" or "Prakash".

54. Even more confusing, "Zia's" email address with Defendant is Zia@transworld.com.

55. This is despite the fact that Defendant's other email addresses are styled as firstname.lastname@transworld.com.

56. Thus, there is no doubt that Defendant is purposefully causing this confusion to capitalize on Plaintiff's well-regarded name in the business.

57. In addition, Plaintiff mistakenly received a check from Defendant's bank, which reflects Defendant's account is in the name of "Transworld Logistics & Shipping" not "TLSS Inc."

58. Thus, Defendant is brazenly infringing on Plaintiff's Trademark.

59. As a result, vendors and clients mistake that Defendant is affiliated with Plaintiff.

60. These vendors have also wrongly attributed Defendants' failure to timely pay invoices to Plaintiff and, as a result, have punished Plaintiff.

61. For example, some vendors, like Hapag Lloyd, Maersk and Ocean Network Express, have severed ties with Plaintiff, mistakenly believing Plaintiff is no longer financially stable.

62. Other vendors, mistakenly confusing Plaintiff for Defendant, have tightened Plaintiff's credit terms by enforcing stricter payment conditions or demanding upfront payments.

63. In addition, major carriers, including CMA-CGM, Forward Air and Kiswani Transport, have confused Defendant for Plaintiff and have redirected contracts from Plaintiff to Defendant, causing Plaintiff significant financial losses.

64. Debt collectors have also sent legal notices to Plaintiff that were meant for Defendant, demanding payment on past due invoices.

65. As a result of Defendant's failure to pay certain invoices, vendors have suspended Plaintiff's credit, which has lowered Plaintiff's credit score.

66. In addition, companies have mistakenly invoiced Plaintiff for shipments or services to Defendant.

67. Plaintiff also mistakenly received a notice from a customer that a container was available.

68. That customer, however, intended to send the notice to Defendant, whose name and address were on the notice, and not Plaintiff.

69. Plaintiff's trust has also been eroded with key suppliers, leading to disruptions in Plaintiff's service and increased costs.

70. As a result of Defendant's infringement of Plaintiff's Trademark, Plaintiff no longer receives 2-3 referrals from clients per day.

71. Instead, Plaintiff is lucky to receive 2-3 referrals per month.

**D.   Defendant's Actions Have Caused Plaintiff To Suffer Major Financial And Operational Losses.**

72. At Plaintiff's peak, its sales were $12 million per year.

73. Now because of Defendant's infringement, Plaintiff's sales are approximately a tenfold decrease.

74. In addition, because of Defendant's infringement, Plaintiff has lost long-standing contracts, key vendor relationships and revenue streams that once sustained Plaintiff's business.

75. Indeed, as a result of Defendant's wrongful actions, Plaintiff was once a market leader but now struggles to maintain relevance in a competitive industry that no longer views it as a dominant player.

76. Plaintiff's losses as a result of Defendant's actions extend beyond finances and include a loss of industry influence, goodwill, customer trust and brand prestige, which have all been eroded.

77. Further, as Plaintiff's sales volume reduces, so too does Plaintiff's ability to negotiate favorable terms with vendors.

78. Specifically, with a lower volume of shipments, Plaintiff cannot negotiate favorable terms with any vendors and, therefore, cannot offer competitive rates to clients or potential clients.

79. Thus, it is clear that Defendant has attempted to capitalize on Plaintiff's valuable reputation and customer goodwill by using the Trademark and/or confusingly similar marks in a manner that has caused consumers, potential customers and vendors to believe that Defendant is associated with Plaintiff when they are not.

80. Defendant has injured Plaintiff's reputation and goodwill, caused consumer confusion, mistake and deception as to the source of origin or relationship of Plaintiff's services and Defendant's services and has otherwise competed unfairly by unlawfully trading on and using Plaintiff's Trademark without permission.

81. Unless stopped, Defendant's use of the Trademark will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion and dilution by blurring and tarinishment.

## V.    CLAIMS

### A.    COUNT ONE: Trademark Infringement in Violation of 15 U.S.C. §1114

82. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

83. Defendant has knowingly used and continues to use in commerce, without Plaintiff's permission or authorization, the Trademark and/or confusingly similar marks, in connection with Defendant's services.

84. Defendant has used the Trademark with the knowledge of and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off Plaintiff's Trademark.

85. Defendant's use of the Trademark constitutes infringement of the Trademark; is likely to confuse, mislead, or deceive and has confused, misled or deceived customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant's services with Plaintiff's services; and is likely to and has cause such people to believe in error that Defendant's services have been authorized, sponsored, approved, endorsed, or licensed by Plaintiff or that Defendant is in some way affiliated with Plaintiff.

86. Plaintiff has no control over the nature and quality of Defendant's services and Plaintiff's reputation and goodwill have and will continue to be damaged—and the value of Plaintiff's Trademark jeopardized—by Defendant's continued use of Plaintiff's Trademark and/or confusingly similar marks.

87. Because of the likelihood of confusion and, indeed actual confusion, between Defendant's services and Plaintiff's services, any defects, objections, or faults found with Defendant's services will or have negatively reflect(ed) upon and injure(d) the reputation that Plaintiff has established for the services it offers in connection with its Trademark.

88. As such, Defendant is liable to Plaintiff for infringement of the Trademark under 15 U.S.C. § 1114.

89. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered, continues to suffer, and/or is likely to suffer damage to its Trademark, business reputation, and goodwill that money cannot compensate.

90. Unless enjoined, Defendant will continue to use Plaintiff's Trademark and/or confusingly similar marks and will cause irreparable damage to Plaintiff for which Plaintiff has no adequate remedy at law.

91. Thus, Plaintiff entitled to an injunction restraining Defendant and, as applicable, Defendant's officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

92. Plaintiff is further entitled to recover from Defendant the actual damages Plaintiff has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's wrongful acts.

93. Defendant's use of the Trademark and/or confusingly similar marks has been intentional and willful.

94. Defendant's bad faith is evidenced at least by the similarity of the marks Defendant is using to the Trademark and the extensive nature of the infringement.

95. Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

96. Pursuant to 15 U.S.C. § 1117, Plaintiff is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

**B.     COUNT TWO: False Designation of Origin/Unfair Competition in Violation of 15 U.S.C. 1125(A)**

97.     Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

98.     The Trademark is federally registered and entitled to protection under federal and common law.

99.     Plaintiff has extensively and continuously promoted and used the Trademark for many decades in the United States.

100.    Defendant's unauthorized use of the Trademark and/or confusingly similar marks constitutes a false designation of origin that has caused consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant and/or Defendant's services by creating the false and misleading impression that Defendant's services are authorized by or associated with Plaintiff.

101.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered, continues to suffer, and/or is likely to suffer damage to its Trademark, business reputation, and goodwill that money cannot compensate.

102.    Unless enjoined, Defendant will continue to use Plaintiff's Trademark and/or confusingly similar marks will cause irreparable damage to Plaintiff for which Plaintiff has no adequate remedy at law.

103.    Thus, Plaintiff is entitled to an injunction precluding Defendant and, as applicable, Defendant's officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Trademark and/or confusingly similar marks in connection with Defendant and the promotion, marketing, offer to sell, or sale of any Defendant's services.

104. Plaintiff is further entitled to recover from Defendant the actual damages Plaintiff has sustained, is sustaining and/or is likely to sustain as a result of Defendant's wrongful acts.

105. Defendant's use of the Trademark and/or confusingly similar marks has been intentional and willful.

106. Defendant's bad faith is evidenced at least by the similarity of the markings of Defendant's mark to Plaintiff's Trademark and the extensive nature of the infringement.

107. Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

108. Pursuant to 15 U.S.C. § 1117, Plaintiff is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

C. **COUNT THREE: Common Law Trademark Infringement and Unfair Competition**

109. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

110. Plaintiff was the first to use the Trademark.

111. As a result of Plaintiff's continuous promotion and sales of services bearing Plaintiff's Trademark for decades, Plaintiff has been identified in the public as the owner of the Trademark.

112. Defendant, with knowledge and intentional disregard of Plaintiff's rights, continues to advertise, promote, and sell its services using the Trademark and/or confusingly similar marks.

113. Defendant's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of Plaintiff's services.

114. Defendant's acts alleged herein and specifically, without limitation, Defendant's use, manufacture, promotion, offers to sell and/or selling in the United States services that are

confusingly similar to services bearing Plaintiff's Trademark, infringe Plaintiff's exclusive trademark rights in violation of the common law.

115. As a direct and proximate result of Defendant's wrongful acts alleged above, Plaintiff has suffered, continues to suffer, and/or is likely to suffer damage to its Trademark, business reputation and goodwill that money cannot compensate.

116. Unless restrained, Defendant will continue to use the Trademark and/or confusingly similar marks and will cause irreparable damage to Plaintiff for which Plaintiff has no adequate remedy at law.

117. Thus, Plaintiff is entitled to an injunction restraining Defendant and, as applicable, Defendant's officers, members, agents, servants and employees and all persons acting in concert with them, from using the Trademark and/or any confusingly similar marks in connection with Defendant and the promotion, marketing, offer to sell or sale of any Defendant's services.

118. Defendant's use of the Trademark and/or confusingly similar marks has been intentional and willful.

119. Defendant's bad faith is evidenced at least by the similarity of Defendant's mark to the Trademark and the extent of the infringement.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks:

a.   A judgment and order that Defendant has willfully:

(1) infringed Plaintiff's Trademark in violation of 15 U.S.C. § 1114;

(2) used false designations or origin in violation of 15 U.S.C. § 1125(a); and

(3) violated Plaintiff's common law rights in Plaintiff's Trademark.

    b.    A judgment and order enjoining Defendant and Defendant's affiliates, officers, agents, employees, attorneys and all other persons acting in concert with Defendant during the pendency of this action and permanently thereafter from:

        (1) Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products or services under Plaintiff's Trademark, any marks substantially indistinguishable therefrom, or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that Defendant caused to enter the stream of commerce or any of Defendant's commercial activities are sponsored or licensed by Plaintiff, are authorized by Plaintiff, or are connected or affiliated in some way with Plaintiff or Plaintiff's Trademark;

        (2) Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products or services under Plaintiff's Trademark, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

        (3) Implying Plaintiff's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendant's products, services, or commercial activities, passing off Defendant's business as that of Plaintiff's, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Plaintiff and from otherwise interfering with or injuring Plaintiff's Trademark or the goodwill associated therewith;

  (4) Representing or implying that Defendant is in any way sponsored by, currently affiliated with, or licensed by Plaintiff; or

  (5) Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs b(1) to (4) above.

 c. An order that Plaintiff is the exclusive owner of the Trademark and that the Trademark is valid and protectable;

d. An order that Defendant be required to deliver to Plaintiff for destruction any and all products or services, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody or control bearing Plaintiff's Trademark, any marks substantially indistinguishable therefrom, confusingly similar marks;

e. An order granting an award of damages suffered by Plaintiff according to proof at the time of trial;

f. An order that Defendant account to Plaintiff for any and all profits earned as a result of Defendant's acts in violation of Plaintiff's rights;

g. An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

h. An award of statutory damages pursuant to 15 U.S.C. § 1117(c);

i. An order granting an award of punitive damages for the willful and wanton nature of Defendant's aforesaid acts under the common law;

j. An order granting pre-judgment interest on any recovery by Plaintiff;

k.  An order granting an award of Plaintiff's costs, expenses and reasonable attorneys' fees; and

l.  Granting such other and further relief as is just and proper.

### VII.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

*Catherine Pastrikos Kelly*
By: Catherine Pastrikos Kelly, Esq.
MEYNER AND LANDIS LLP
One Gateway Center, Suite 2500
Newark, New Jersey 07102
ckelly@meyner.com
973-602-3423
*Attorneys for Plaintiff*
*Transworld Logistics Group, Inc.*

Dated: May 12, 2025